# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| OPTIMIZE TECHNOLOGY SOLUTIONS, LLC, <br><br> *Plaintiff*, <br><br> v. <br><br> STAPLES, INC., *et al.*, <br><br> *Defendants*. | § § § § § § § § § § § § § CASE NO. 2:11-CV-00419-JRG |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Compel (Dkt. No. 418), filed April 16, 2014. Defendants seek to compel production of documents and information that Plaintiff has withheld on the basis of attorney-client privilege; Defendants dispute that the privilege applies. Having considered the matter, the Court finds that Defendants' motion should be and hereby is **GRANTED IN PART AND DENIED IN PART** for the reasons set forth below.

### I. FACTUAL BACKGROUND

Plaintiff Optimize Technology Solutions, LLC ("Optimize") owns U.S. Patent No. 6,330,592 (the "'592 Patent"), on which this suit for patent infringement rests. Optimize's owner, S. Bradley Jackson, formed the entity that would later become Optimize (here also referred to as Optimize, for simplicity's sake) as a vehicle for purchasing the '592 patent in January 2007. He did so in consultation with Intellectual Property Navigation Group, LLC ("IP Nav"), a business that consults and advises on intellectual property acquisitions. For the matters relevant here, IP Nav acted primarily through its CEO, Erich Spangenberg. Though Mr.

Spangenberg graduated from law school and has previously been admitted as an attorney in the State of Texas, Mr. Spangenberg has not been licensed as an attorney in Texas or in any other state for many years. He was not licensed when Mr. Jackson consulted with IP Nav.

IP Nav's agreement with Optimize provides that "The Company [Optimize] will seek separate, and will not rely on IP NAV to provide, legal, accounting, tax or other similar advice or services." Mr. Spangenberg avers in a declaration that neither he nor IP Nav provide legal advice to its clients (Dkt. No. 418-3). Nevertheless, the disputed documents, which have been produced to the Court *in camera*, clearly indicate that the scope of Mr. Spangenberg's work for Optimize included responsibilities traditionally reserved for attorneys, such as editing draft contracts and giving advice on the structuring of corporate entities.

Importantly, Mr. Jackson seems to have understood that Mr. Spangenberg was an attorney, and appears to have relied on that fact. *See* Dkt. No. 434-1. When Mr. Jackson was asked in his deposition whether Mr. Spangenberg represented him as an attorney, Mr. Jackson responded, simply, "yes" (Dkt. No. 434-4). It is unclear whether Mr. Spangenberg ever informed Mr. Jackson that his membership within the State bar of Texas had terminated. *See* Dkt. No. 434-1, at 1.

## II. LEGAL STANDARDS

To invoke the attorney-client privilege, the claimant must establish (1) a confidential communication; (2) to a lawyer or subordinate; (3) for the primary purpose of securing a legal opinion, legal services, or assistance in the legal proceeding." *Vicknair v. La. Dept. of Pub. Safety & Corr.*, No. 13-30244, 2014 WL 407567, at *7 (5th Cir. 2014) (quoting *United States v. Nelson*, 732 F. 3d 504, 518 (5th Cir. 2013)).

## III. ANALYSIS

The primary question presented in this motion is whether Optimize can claim attorney-client privilege as to communications between itself and Mr. Spangenberg, despite Mr. Spangenberg's lack of a license to practice law. Defendants rely heavily on a formulation of the test for privilege which has previously been cited with approval by the Fifth Circuit, which demands not only the elements related above but also that "the person to whom the communication was made is a member of a bar of a court or his subordinate." *United States v. Kelly*, 569 F.2d 928, 938 (5th Cir. 1978) (quoting *In re Grand Jury Proceedings*, 517 F.2d 666, 670 (5th Cir. 1975), in turn quoting *United States v. United Shoe Machinery Corp.*, 89 F. Supp. 357, 358-59 (D. Mass. 1950)). The "member of a bar" requirement, however, appears to be dicta, despite its wide recitation in case law—as Plaintiff points out, Defendant produces no case law in which the attorney-client privilege was denied because a party's attorney was not a member of the bar.

Indeed, though case law is sparse, it seems to be relatively well established that "the privilege for communications of a client with her lawyer hinges upon the *client's belief* that she is consulting a lawyer in that capacity . . . . It is sufficient if she reasonably believes that the person consulted is a lawyer, though in fact she is not." 1 MCCORMICK ON EVIDENCE § 88 (7th ed. 2013); *accord In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 293 (8th Cir. 1997); *Gucci Am., Inc. v. Guess?, Inc.*, No. 09-Civ-4373-SAS, 2011 WL 9375 (S.D.N.Y. Jan. 3, 2011). The question, then, is whether Mr. Jackson reasonably believed that Mr. Spangenberg was an attorney, acting as such.

Two considerations suggest that Mr. Jackson did so believe, in spite of Mr. Spangenberg's assertions that IP Nav did not provide legal advice. First, the record suggests that

Mr. Spangenberg told Mr. Jackson that he was an attorney, and did not mention that he had not been licensed to practice law for many years. Second, there is substantial ambiguity concerning whether Mr. Jackson *might* have reasonably thought that he was conducting privileged communications with his lawyer. To hold Mr. Jackson to a higher standard of reasonableness would subvert the privilege by requiring clients, who are by nature ill-prepared to conduct a nuanced legal inquiry, to anticipate and resolve legal questions over the confidentiality of their communications. In this case, for instance, a higher standard of reasonableness would be to require him (a) to inquire into the currency of Mr. Spangenberg's license to practice law; and (b) having determined that Mr. Spangenberg was not a *licensed* attorney, to determine, via a process of legal reasoning, that this lack of a license implied that communications with Mr. Spangenberg would not be privileged. It makes little sense that the law demands this level of inquiry from clients, who cannot be presumed to have any special expertise in the law. To impose a purely formalistic test over one that turns on what the client reasonably believed could open the door to a complete lack of privilege where an attorney's license was suspended because his or her bar dues had been mailed improperly and weren't received by the State Bar's deadline, even if he or she wasn't yet aware of the suspension. Form over substance is rarely favored in the law.

Defendants also argue that, because IP Nav's agreement with Optimize arguably disclaimed IP Nav's provision of "legal advice," no reasonable person could have believed that Optimize's communications with IP Nav were made "for the primary purpose of securing a legal opinion, legal services, or assistance in the legal proceeding." *Vicknair*, 2014 WL 407567, at *7. First, the Court notes that IP Nav's engagement letter does not in fact state that IP Nav does not provide legal advice. Rather, it provides that Optimize will engage *other* legal advisers and will not *rely* on IP Nav for legal advice. Thus, it was reasonable for Mr. Jackson to assume that IP

Nav's advice, provided by lawyers on the subject of patent litigation, constituted privileged legal advice. Perhaps more importantly, regardless of whether the language of the agreement disclaimed any pretense to legal advice, it is clear from Mr. Spangenberg's communications that he was *actually* engaged in the provision of legal advice. Again, to deny the privilege on the basis of the formal language of the agreement would be to demand of Mr. Jackson a level of legal skill and understanding not reasonably expected from attorneys' clients.

Accordingly, as a general matter the Court finds that an attorney-client relationship existed between IP Nav and Optimize, and that the privilege extends to all communications between IP Nav and Optimize which were confidential and which concerned legal issues within the scope of IP Nav's representation.

All of the documents that Defendants request appear to fall within this description, save two categories. First, Defendants request IP Nav's agreement with Optimize concerning its representation. Optimize argues that the agreement is irrelevant and thus not discoverable. *See* FED. R. CIV. P. 26. Defendants do not suggest a reason why the engagement agreement would be reasonably calculated to lead to the discovery of admissible evidence, and, from the Court's *in camera* inspection, none is made immediately plain. Moreover, the agreement does contain information relating to the substance of the representation that is subject to the attorney-client privilege. Accordingly, Defendants' request for IP Nav's engagement agreement with Optimize (and its corporate predecessor) (Privilege Log Document Nos. 119, 188, & 188.1) is **DENIED**.

Finally, Defendants request communications between Optimize, IP Nav, and attorney Steve Sprinkle. Sprinkle, who now represents Optimize, also represented the company that owned the '592 patent *before* its sale to Optimize. The evidence suggests that Optimize and Mr. Jackson intended (but didn't) hire Sprinkle before the transaction was fully consummated.

However, a few of the requested documents—Privilege Log Document Nos. 161, 732, and 733—consist of communications between IP Nav, Optimize, and Mr. Sprinkle *during Mr. Sprinkle's representation of an adverse party*. Attorney-client privilege is waived in such circumstances. *See United States v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir. 1982). The Court thus **GRANTS** the motion with respect to Privilege Log Document Nos. 161, 732, and 733. After the transaction was concluded, however, the Court finds that Mr. Sprinkle's planned representation of Optimize is sufficient to maintain the privilege.

## IV. CONCLUSION

In accordance with the reasoning set forth above, Plaintiffs are hereby **ORDERED** to produce Privilege Log Document Nos. 161, 732, and 733 to Defendants within five days of the date of this Order. All relief requested in this motion that the Court has not specifically granted is hereby **DENIED**.

**So ORDERED and SIGNED this 16th day of June, 2014.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE